IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

RANDY DEAN MCKINLEY,                )
    Petitioner,                      )
                        )
              v.               )     Civil No.:  1:23-cv-105
                        )     Criminal No.:  1:21-cr-59
UNTED STATES OF AMERICA,           )     (Judge Kleeh)
    Respondent                       )

## UNITED STATES' MEMORANDUM IN OPPOSITION TO DEFENDANT'S AMENDED MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY [Doc. 61]

Comes now the United States of America and William Ihlenfeld, United States Attorney for the Northern District of West Virginia, by Jennifer T. Conklin, Assistant United States Attorney for said District, and responds in opposition the Defendant's Amended Motion Pursuant to 28 U.S.C. § 2255.

### I. Relevant Procedural Background

On October 22, 2021, the United States filed a one count information charging Randy Dean McKinley (hereinafter "petitioner") with Possession of Child Pornography.  [Doc. 1].   On November 16, 2021, the petitioner appeared before the Honorable Michael J. Aloi for his initial appearance, his arraignment and to enter into a plea.  [Docs. 5-12].  The petitioner waived his right to have the case presented to a grand jury.  [Doc. 11].  The petitioner was represented by Joseph F. Shaffer.  [Doc. 4].  At the hearing on November 16, 2021, the petitioner was placed under oath and Magistrate Judge Aloi colloquied the petitioner on several topics.  [Doc. 35 – Transcript of Initial Appearance/Arraignment/Plea hearing].

During the plea colloquy, Judge Aloi inquired if the petitioner had had adequate time to

discuss his case fully with his attorney, and the petitioner replied that he had adequate time.  [*Id.* at 11].  The petitioner was asked if his attorney had been able to answer his question about how to proceed in the case and the petitioner advised he had.  The court asked if there was anything that his lawyer had not done that he had asked him to do and the petitioner replied there was nothing. [*Id.* at 12].  Finally, the court asked the petitioner if he was satisfied with the legal advice he received from his attorney and the petitioner replied yes.  [*Id.*].

The court enquired from defense counsel whether he had adequate time to consider possible defense and if there were any viable defenses.  [*Id.*]  Mr. Shaffer indicated that he had sufficient time and that there were no defenses "in his client's best interest."  [*Id.*]  The court then had the prosecutor read the terms of the plea agreement, and the plea agreement specifically noted that the petitioner agreed that there was no evidence of ineffective assistance of counsel at the time that he proceeded with his plea.  [*Id.* at 16-28].  The court inquired of the petitioner if the prosecutor's recitation was a fair summary and if he understood what the agreement does and requires of him. [*Id.* at 29].  The petitioner confirmed that it was a fair summary, that he understood the agreement, and that he understood what was required of him.  [*Id.*].  The petitioner then acknowledged to the court that he reviewed each page of the plea agreement and that if he had any questions his attorney was able to answer all those questions satisfactorily and that he had sufficient time to consider the plea agreement and effects.  [*Id.* at 30].

The Magistrate Judge then went through the terms of the plea agreement and explained that the stipulation as to the guidelines level is merely a recommendation to the District Court and that the District Judge does not have to follow them.  [*Id.* at 32-33].  When asked how he plead to the charge of possession of child pornography, the petitioner stated "Judge, I plead guilty to having over 600 images of child pornography, and of distributing those via computer."  [*Id.* at 34].  The

2

prosecutor then set forth the factual basis for the charges by proffer: law enforcement obtained a tip that an individual identified as the petitioner sent a video containing a minor engaged in sexually explicit conduct over Facebook Messenger. [*Id.* at 38-39]. After conducting further investigation, law enforcement obtained a search warrant for the petitioner's residence. [*Id.* at 39]. In executing that search warrant at the petitioner's residence, law enforcement seized an iPad from the residence. [*Id.*] A search of that iPad pursuant to the search warrant revealed the Facebook messenger conversations in which the explicit video described in the tip had been shared. [*Id.*]. The iPad also contained two other Facebook accounts that were used by the petitioner, and also located 105 videos of child pornography sent to or received by the petitioner via those Facebook accounts, including videos of individuals under the age of 12. [*Id.* at 40]. The Court inquired of the petitioner if the proffer by the government accurately reflected the petitioner's offense conduct and he indicated that it did. [*Id.* at 41]. The petitioner then stated, "I did knowingly and willfully obtain over 600 images of prepubescent children or children under the age of 12, and I had set up additional accounts – additional accounts that were not my own in order to trade and distributed pictures and images to other people on Facebook via Messenger." [*Id.* at 41]. The petitioner also stated that the pictures and/or images were sexually explicit. [*Id.*]

The court then further reviewed the petitioner's tentative guideline range, based upon the stipulation of the parties, and explained that the district court was not bound by the advisory guideline range. [*Id.* at 48-50]. The petitioner acknowledged that he understood. [*Id.*]. The Court then colloquied the petitioner about his waiver of rights and reminded him that the only legal remedy available to the petitioner was a claim of ineffective assistance of counsel or prosecutorial misconduct. [*Id.* at 52-53]. When the Magistrate Judge asked, the petitioner stated that he does not know of any evidence that would suggest his attorney had been ineffective in representing him.

[*Id.* at 53]. After reviewing several more of the petitioner's rights with him, the Magistrate Judge indicated that he would recommend the petitioner's guilty plea be accepted by the district court. [*Id.* at 60]

Following the acceptance of the petitioner's guilty plea, the United States Probation Office completed a presentence investigation of the petitioner. [Doc. 22]. As part of the presentence investigation, the petitioner disclosed that his wife has health issues and mobility problems and that he was her primary caretaker. [*Id.* at 13]. The petitioner disclosed that his only medical diagnosis was high cholesterol, but also reported a diagnosis of pedophilia and anxiety. [*Id.*]

The petitioner appeared before the Court on April 11, 2022, for sentencing before the Honorable Judge Thomas Kleeh. After placing the petitioner under oath, the Court inquired as to whether the petitioner had the opportunity to read and review the presentence report before his hearing and whether he was able to fully discuss the report with his attorney. [Doc. 36 at 3]. The petitioner acknowledged that he had both read and reviewed the presentence report and discussed it with his attorney. [*Id.* at 4]. And when asked, the defense had no objections to the presentence report. [*Id.*]. The Court then calculated the petitioner's guidelines, finding additional offense characteristics applied other than what was stipulated to by the parties in the plea agreement. [*Id.* at 7-9]. The petitioner was advised that he had the opportunity to make a statement which would "provide the Court with information that might mitigate or lessen your sentence in this case." [*Id.* at 12]. The petitioner then made his statement to the Court, in which he apologized for his behavior, mentioned that he did not grow up in a good household, and stated that his brother had introduced him to pornography at a younger age and that his brother "took advantage of the age difference." [*Id.* at 12-13]. The petitioner spoke about how he spent his life, both as a teacher and substitute teacher, helping his students, and he stated that he was engaged in treatment for sex

4

offenders so that he could "stay on the straight and narrow." [*Id.* at 13]. The petitioner did not mention anything about his wife or her medical conditions, or even his medical conditions, when given the opportunity.

The Court then sentenced the petitioner to 168 months in federal prison to be followed by supervised release for life. [*Id.* at 15-16]. After the Court pronouncing the sentence and the reasons for the sentence, the Court entertained a request from defense counsel to permit the petitioner to voluntarily report to begin serving his sentence. [*Id.* at 32]. The government had no objection. [*Id.*]. The Court found, however, that the petitioner was a danger to the community and ordered that the petitioner be remanded to custody immediately. [*Id.* at 32-33].

The petitioner filed his Notice of Appeal on May 9, 2022, and on July 7, 2022, the Federal Defender was appointed to assist in his appeal. [Doc. 27, 32]. Appointed counsel filed an *Anders* brief, but the defendant was permitted to raise his own issues on appeal as well. [Case number, 22-4273, 4th Cir]. On December 14, 2022, the petitioner filed a supplemental brief , alleging that his plea was not knowing and voluntary and that the court used protecting information in his sentencing determination. [Doc. 44, Case number 22-4273, 4th Cir.] The petitioner's Judgment and Sentence were affirmed by the Fourth Circuit on October 2, 2023. [Doc. 41, 42].

The petitioner filed his first "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" on December 27, 2023. [Doc. 44]. The petitioner was advised that his pleading was deficient and was advised to refile in the proper format. [Doc. 49]. On January 12, 2024, the petitioner filed his motion in the proper format and asserted three grounds for relief, all premised on ineffective assistance of counsel, asserting that his attorney was ineffective because: (1) he never objected to the guideline calculation; (2) he never hired a forensic specialist to review the evidence against the petitioner; and (3) he failed to

intervene, investigate or mitigate the guidelines calculation. [Doc. 52]. The petitioner then filed a motion seeking permission from the court to amend his Motion pursuant to 28 U.S.C. 2255. [Doc. 58]. The Court granted the petitioner's motion and on February 26, 2024, the petitioner filed his amended motion pursuant to 28 US.C. §2255. [Doc. 61]. In his amended motion, the petitioner states eight instances or occurrences in which he alleges his counsel was ineffective at various stages of the proceeding. Each of the petitioner's arguments, however, is unsupported by the record and devoid of any specificity and therefore must fail. The United States will address each allegation in turn.

## II. Legal Standard

Claims of ineffective assistance of counsel must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1987), i.e., that counsel's performance was deficient and the petitioner was prejudiced as a result. Counsel is presumed to have provided effective assistance and the petitioner has the burden to show that the assistance fell below the "prevailing professional norms." *Strickland*, 466 U.S. at 687; *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). "Counsel is constitutionally ineffective only if performance below professional standards caused the petitioner to lose what he otherwise would probably have won . . . . [T]he threshold issue is not whether [counsel] was inadequate; rather, it is whether he was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc*) (emphasis in original) (internal citation omitted). When it comes to the prejudice prong, the petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Taylor*, 529 U.S. 362, 391 (2000). When the conviction is based on a guilty plea, a different inquiry is necessary. *United States v. Fugit*, 703 F.3d 248, 259 (4th Cir. 2012).

To meet the prejudice prong in the context of an ineffective assistance claim where the petitioner entered a guilty plea, the petitioner must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

### III. Argument

The petitioner bears the burden to set forth adequate facts to establish that he is entitled to relief. While the petitioner makes multiple claims of ineffective assistance, the petitioner either misstates the law or the facts related to his case. Each claim will be addressed in turn:

**A.   Counsel was not ineffective when he failed to file and argue motions to suppress the Petitioner's self-incriminating statement.**

The petitioner claims that his attorney was ineffective for failing to file and argue motions to suppress the petitioner's self-incriminating statement which he claims was obtained in violation of his Fifth Amendment Rights against self-incrimination. [Doc. 61 at 9; Doc. 61-1 at 5-7]. The petitioner claims that the government used statements given at the time of his arrest to obtain the charges against him. The petitioner claims the Court should have conducted a *Kastigar* hearing, and that if a motion to suppress would have been filed, his statements would not have been used against him and the results of the results of the case would have been different. Petitioner's argument fails both in the deficiency of its pleading and on the record.

The petitioner has failed to allege with any level of specificity what statement was obtained in violation of his Fifth Amendment right against self-incrimination and how that statement was used against him. Critically, the petitioner cannot meet his burden on this allegation because the record clearly reflects that no statement was obtained from the petitioner, in violation of his rights or otherwise, which was used against him to secure charges.

Indeed, during the plea colloquy, the government summarized the evidence that would be

presented at trial in order to sustain a finding of guilt beyond a reasonable doubt on the charged offense of possession of child pornography. The government's recitation of the evidence was that law enforcement had received a tip from the National Center for Missing and Exploited Children that Facebook had identified a video containing child pornography which had been sent via Facebook Messenger by the petitioner. [Doc. 35 at 38]. Facebook provided the petitioner's name, date of birth, email address, IP address, and username. [*Id.*]. Law enforcement subpoenaed the subscriber information associated with the IP address. The records provided by Comcast reflected an associated email address, that was the same email address associated with the petitioner's Facebook profile. [*Id.* at39]. Law enforcement then obtained a search warrant for the petitioner's address and, pursuant to that search warrant, seized the petitioner's iPad. [*Id.*]. Review of that iPad identified a Facebook account for the petitioner with an ID number that matched the profile listed in the cyber tip, and an additional Facebook account for an individual named Randy McKinney, who had an identical profile picture to the account belonging to the petitioner. [*Id.*]. Review of the Messenger account revealed that the petitioner sent private messages to other individuals through Messenger discussing the trading of child pornography. [*Id.* at 39-40]. The petitioner also sent child pornography videos to the Randy McKinney account. [*Id.* at 40]. Investigators also located a third account that appeared to belong to the petitioner but listed his date of birth as much younger. [*Id.*]. A search warrant was also served on Facebook for the accounts. [*Id.*]. As a result of the search warrants, law enforcement located approximately 105 videos sent to or received by the main Randy McKinley Facebook account. [*Id.*].

After the proffer by the government, the petitioner acknowledged under oath that the proffer accurately reflected his involvement in what occurred. [Doc. 35 at 41]. After the petitioner acknowledges the accuracy of the government's proffer, the petitioner makes his only substantive

8

statement on the record:  his admission to the Court, at the request of the Court, as to what he did that made him guilty.  [*Id.*].

The defendant's argument rests on a flawed assertion that his attorney should have sought to suppress a statement made at the time of his arrest, however, the defendant was never arrested in the federal case and appeared in court after the plea had been negotiated and an information was filed.  There was never an arrest in the federal case.  Additionally, the petitioner asserts that the court should have conducted a *Kastigar* hearing, however, the evidence against the petitioner was derived from a tip to the National Center for Missing and Exploited Children and subsequent subpoenas and search warrants and not derived from an immunized statement by the defendant in a proffer.  Again, the defendant's argument is based on a flawed understanding of the law.  Counsel cannot be deemed ineffective for not raising meritless claims.  *See, e.g.*, *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001);  *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000).

### B. Counsel was not ineffective when he did not file a motion for a competency hearing.

The petitioner alleges that his attorney was ineffective for failing to request a competency hearing.  The petitioner asserts his attorney should have filed a motion stating that evidence existed in the court record and other records that he suffered from "some kind of mental disease or defect rendering him mentally incompetent."  [Doc. 61-1 at 8].  The petitioner presents no evidence, however, of what mental disease or defect he suffered from, how it impaired his ability to understand the proceedings, or hindered his ability to assist in his defense.

A competency evaluation and competency hearing are only necessary when there is "substantial evidence" of a petitioner's incompetency or if the court has a reasonable doubt about a petitioner's competency.  *Pate v. Robinson*, 383 U.S. 375, 385 (1966); *Medina v. California*, 505 U.S. 437, 449 (1992).  Absent some evidence of record that would raise a doubt as to the

petitioner's competence to proceed, such as irrational behavior, improper demeanor, or inability to communicate effectively, counsel cannot be deemed ineffective for not litigating a competency issue or seeking a mental health assessment. *See Mackey v. Dutton*, 217 F.3d 399, 411 (6th Cir. 2000). The petitioner has not met his burden, as his argument is supported only by bare, conclusory allegations. The petitioner does not allege what mental illness he suffered from, or how his mental illness impacted his ability to communicate with his counsel or to assist in his defense.

Moreover, the record of the petitioner's appearance at his arraignment and plea hearing refutes his claim that he suffered from a mental illness that impacted his ability to communicate with his attorney or assist in his defense. During the colloquy with Magistrate Judge Aloi, Magistrate Judge Aloi asked the petitioner if he was under the care of a medical professional for any physical or mental illness. [Doc. 35 at 7]. The petitioner, under oath, stated that he saw a doctor and that he was participating in talk therapy. [*Id.*]. Magistrate Judge Aloi asked the petitioner whether he was taking any medications and the petitioner advised that he took Cymbalta and Lexapro. [*Id.* at 8]. The petitioner replied that he'd been taking the medication for an extended period and that he's been "stabilized" on the medication. [*Id.*] Magistrate Judge Aloi asked the petitioner if there was anything about his treatment that affected his "ability to understand what we're doing here at this meeting today?" [*Id.* at 9]. The petitioner affirmatively stated, "it does not." [*Id.*]. The petitioner's attorney was asked if he had any reason to question the competence of the petitioner, and he stated he did not. [*Id.*].

The petitioner, having stated under oath that there was nothing about his mental illness that impacted his ability to understand what was occurring in court, has not met his burden of presenting any evidence that he was suffering from a mental illness that impeded his ability to know what was going on and to participate in his defense such that his attorney should have raised

competence.

**C. Counsel was not ineffective when he failed to investigate the case or possible defenses.**

The petitioner alleges that his attorney was ineffective in that his attorney failed to investigate adequately or prepare a defense to the charges. The petitioner only alleges that had his attorney investigated the case, the attorney would have realized that the prosecution used the petitioner's "self-incriminating statement to charge the Petitioner, and used the statement for the factual background for the plea and enhanced Petitioner sentence." For the same reason that the petitioner's first claim of ineffective assistance of counsel fails, so must this. As demonstrated in the proffer during the petitioner's Rule 11 hearing, the government did not derive any evidence that supported the charges in violation of the petitioner's Fifth Amendment right. [Doc. 35 at 38-40]. While the petitioner alleges that the government used "self-incriminating" statements against him, there is no evidence of what these "statements" are. The statements in the record are the petitioner's statement to Magistrate Judge Aloi during the Rule 11 hearing, the petitioner's statements to the probation officer in connection with the presentence investigation report, and the petitioner's statements to Judge Kleeh during sentencing. All of these statements, however, were made after the petitioner entered a negotiated plea to an information and none of these statements would have been (or could have been) statements the government used in proving its case beyond a reasonable doubt, nor would they have been statements that would have resulted in defense counsel having to pursue different or additional lines of defense.

The mere fact that a statement is incriminating does not mean that the statement was obtained or used in violation of the United States Constitution or law. *See Chavez v. Martinez*, 538 U.S. 760, 766-67 (2003); *Rhode Island v. Innis*, 446 U.S. 291, 299-303 (1980). Again, the petitioner fails to allege what "incriminating" statement was used against him, nor has he explained

11

how further investigation by his defense attorney would have led counsel to a legitimate defense strategy.  The petitioner has failed to meet his burden of showing ineffective assistance of counsel.

### D. Counsel was not ineffective when he failed to file a motion to withdraw the petitioner's guilty plea.

The petitioner claims that his attorney was ineffective for failing to file a motion to withdraw his guilty plea.  The petitioner alleges that "fair and just reasons" exist and they are clear on the record.  The petitioner, however, has failed to set forth any reason that the Court should have allowed the plea to be withdrawn and therefore has failed to sustain his burden.  Counsel cannot be deemed ineffective for not raising meritless claims.  *See, e.g.*, *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001);  *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000).

### E. Counsel was not ineffective when he failed to inform the petitioner of the nature of the charges and the consequences of his guilty plea.

The petitioner alleges that he was prejudiced by his attorney's erroneous advice and his attorney's failure to inform him of the true nature of the charges to which he was pleading.  The petitioner alleges that were it not for his attorney's erroneous advice, he would not have pled guilty.  The petitioner fails to allege what advice of his attorney was erroneous, however.  The petitioner states he was never informed that the government had to prove the charge beyond a reasonable doubt, and, further, he alleges that his attorney incorrectly advised him how to answer Magistrate Judge Aloi during the plea colloquy.

The petitioner's allegations are in direct conflict with his sworn statement during his Rule 11 hearing.  "[A] defendant's solemn declarations in open court affirming [a plea] agreement . . . carry a strong presumption of verity." *United States v. Lemaster*, 403 F.3d 216 (4th Cir. 2005).  The record is clear that the petitioner knew the true nature of the charges that he was pleading to.  Magistrate Judge Aloi read the petitioner the one count information to the petitioner and advised him of the maximum penalty.  [Doc. 35 at 4-5].  The petitioner stated that he had the

opportunity to review the information with his attorney. [*Id.* at 6]. The court then evaluated the petitioner's competency to proceed, and learned that the petitioner was 57 years old, had a bachelor's degree in education, and was not taking any medication or illegal drugs that impaired his ability to think and communicate. [*Id.* at 6-9]. When Magistrate Judge Aloi asked the petitioner if he'd had enough time to discuss his case fully with his attorney, the petitioner reported that he had. [*Id.* at 11]. The petitioner also stated that his attorney had answered all his questions about how to proceed in the case, that his lawyer had done everything that he wanted, and that he was satisfied with the legal advice he'd received. [*Id.* at 11-12].

During the Rule 11 hearing, the prosecutor went through the terms of the plea agreement and, in doing so, noted for the court that the plea was signed more than one month after the timely acceptance deadline, however, the prosecutor explained that the deadline was extended due to agreement of the parties. [Doc. 35 at 16-17]. What was clear from that explanation was that the petitioner had time to consult with his attorney. [*Id.* at 17]. The petitioner, after hearing the prosecutor read the terms of the plea agreement, confirmed that he understood what the plea agreement did, what it required of him, and that he had no questions about his plea agreement. [*Id.* at 29]. The petitioner told Magistrate Judge Aloi that he had reviewed all seven pages of the plea agreement, that he had signed each page, and that he read all the pages of the agreement with his attorney. [*Id.* at 30]. The petitioner agreed that he had the time he needed to consider the plea agreement, the effects of it, and confirmed that he was not rushed. [*Id.*] Magistrate Judge Aloi advised the petitioner that by entering the plea agreement, he was binding himself to the agreement, but that the district court did not have to accept the recommendations of the parties and that if the district court did not accept the recommendations, including the stipulation to the guidelines level, the petitioner was not allowed to withdraw his plea. [*Id.* at 32-33].

Tellingly, when Magistrate Judge Aloi inquired during the plea colloquy as to how the petitioner pled to the charge of possession of child pornography, the petitioner stated, "I plead guilty to having over 600 images of child pornography, and of distributing those via computer." [*Id.* at 34]. The court continued with the Rule 11 colloquy and reviewed the elements of the charge with the petitioner, advised him of the maximum penalty for the offense, and explained that the government had the burden of proving each element beyond a reasonable doubt.  [*Id.* at 35-36]. Furthermore, the Court explained to the petitioner that by entering a plea he would be a felon which would impact his civil rights, and also, because of the nature of the charges, he would be required to register as a sex offender.  [*Id.* at  43].  In response to Magistrate Judge Aloi's question, the petitioner advised that he had discussed the application of the Sentencing Guidelines to his case, that he had looked at the sentencing table, and that, given the stipulations of the parties he was facing a term of imprisonment and that he understood that the district court was not required to accept the stipulation in the plea agreement.  [*Id.* at 48-50].  Finally, Magistrate Judge Aloi reviewed all of the petitioner's constitutional rights and found that the petitioner was making a knowing, intelligent, and voluntary waiver of his rights and that the petitioner's plea was knowing, intelligent, and voluntary.  [*Id.* at 52-59].  It was only after all that was done that the petitioner formally entered his plea to possession of child pornography.  [*Id*. at 59]

The petitioner's sworn statements during the Rule 11 hearing refute the petitioner's claim that he did not understand what he was doing, the nature of the charges, the government's burden, or the consequences.  "[I]n the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'"  *United States. v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005).  For this reason, the petitioner's allegation of

ineffective assistance is not credible.

**F. Counsel was not ineffective because he did not induce his client to plead by using false statements.**

The petitioner asserts that his attorney was ineffective because he erroneously advised the petitioner to plead guilty. The defense asserts that his attorney gave him misleading advice, that he did not understand the nature of the offense he was pleading to, that the plea agreement was misleading, and that he was manipulated to cover up his attorney's inadequacies. For the same reasons that are elaborated in the previous section (i.e., that these allegations are in direct conflict with the petitioner's own sworn statements to the magistrate judge), the petitioner's claim of ineffective assistance should be denied. Additionally, the petitioner's claim that his attorney manipulated him lacks any merit in the petitioner does not actually allege what his attorney said to him or what specifically was misrepresented to him.

In reviewing the entirety of this motion, it is patently obvious that the petitioner found case law that discussed ineffective assistance claims and fashioned his arguments of ineffective assistance of counsel based solely on the case law that he found. Every single allegation presented by the petitioner lacks any factual basis and is conclusory. The petitioner has not alleged what misrepresentation was made, or how the plea agreement and information were deceptive and ambiguous. The petitioner also asserts that the appellate waiver should be invalidated, however, he fails to present any reason as to why. The petitioner has failed to meet his burden.

**G. Counsel was not ineffective for not filing frivolous objections to the presentence report.**

The petitioner argues that his attorney was ineffective for failing to file objections to the presentence investigation report. The petitioner identifies two objections that he believes his attorney should have made. The petitioner alleges that the first objection should have been to the prosecutor's introduction of the petitioner's self-incriminating statements at the plea and

sentencing hearings.  The second objection he argues his attorney should have made is to the presentence report generally, that the prosecution breached the plea agreement, and that the petitioner was sentenced on unreliable information.

Again, the petitioner's claims lack any factual basis and his allegations are conclusory.  As to the first objection, that the government introduced the petitioner's self-incriminating statements, the record reflects that the government did not introduce *any* statements of the petitioner during the Rule 11 hearing, in the government's version of the offense in the presentence investigation report, or during the sentencing hearing.  [*See* Docs. 22, 35, 36].  Defense counsel cannot be ineffective for not objecting to something that doesn't exist.

The proposed second objection to the presentence report also lacks any sort of factual basis. The government did not breach the plea agreement.  The terms of the plea agreement were that the government would make certain non-binding recommendations:  a 2-level reduction in the guideline for "acceptance of responsibility," an additional one level for timely acceptance, and that the government would recommend any sentence of incarceration would be at the lower end of the guideline range.  [Doc. 12].  At the petitioner's sentencing, the government moved for a third level and asked for a sentence at the low end of the guideline range.  [Doc. 36 at 8, 14].  The government fulfilled its obligations pursuant to the terms of the plea agreement.

The second part of the second objection is that his attorney failed to file an objection to the "hearsay, speculation, and uncorroborated evidence attributed to him."  [Doc. 61-1 at 21].  The Petitioner does not specify what evidence was speculative or uncorroborated.  And an objection to hearsay is – and would have been – misplaced because hearsay is admissible in a sentencing hearing.  *Williams v. People of State of New York*, 337 U.S. 241, 250 (1949).  Moreover, the petitioner's own statement at his sentencing hearing, under oath, rebuts his allegation that there

16

was objectionable material in the presentence investigation report. After being sworn in, the petitioner was asked by the court if he had the opportunity to read and review the presentence report and discuss it with his attorney. [Doc. 36 at 3]. The petitioner acknowledged that he had and he did. [*Id.* at 3-4]. When asked by the Judge if there were any objections, counsel responded that there were none. [*Id.* at 4]. Again, the Court, after calculating the petitioner's guidelines, asked if anyone had any objection or concern with the calculations or findings. [*Id.* at 11]. Defense counsel stated that there were no objections. [*Id.*]. And finally, the petitioner had an opportunity to address the court, after being advised that he had the right, but was not obligated to. [*Id.* at 11-12]. The petitioner was also advised he had the right an opportunity to present any mitigation. [*Id.* at 12]. The petitioner apologized to the Court and blamed his behavior on his poor upbringing. [*Id.* at 12-13]. The petitioner advised the court that he had spent his life teaching and trying to help children to be the best they could be. [*Id.* at 13]. Finally, the petitioner advised that he had taken responsibility for his behavior and had sought out and was participating in treatment. [*Id.*]. The petitioner never brought up any other mitigation evidence, not medical issues and not family issues, despite having the opportunity and being advised by the court that it was the appropriate time. Moreover, the petitioner did not assert that he had any problems with his attorney, that he wanted something else done, or that he wanted the Court to re-examine something. The petitioner was placed under oath and swore to tell the truth. The petitioner's statements during the sentencing hearing made under oath bear more weight than the baseless assertions in his motion. The petitioner has failed to demonstrate any error on behalf of his attorney.

### H. Counsel was not ineffective for filing an *Anders* brief.

The petitioner asserts that was also prejudiced by ineffective assistance by his appellate counsel. The petitioner asserts that his appellate counsel should have raised thirteen different arguments in his brief and that, if his counsel had raised these arguments, his judgment and

sentence would have been reversed.  While his appointed counsel filed an Anders brief, the petitioner did file a supplemental brief with the Fourth Circuit in his direct appeal of his conviction. At that time, the defendant only raised the fact that he was not informed of all the elements of the crime he pled to and it was therefore involuntary, and that the court relied on protected information when he was being sentenced as the grounds for the reversal of his judgment and sentence.  [Doc. 44, Case Number 22-4273, 4ᵗʰ Cir. Court of Appeals].  Most of the thirteen arguments that the Petitioner alleges should have been made on direct appeal were not even raised by the petitioner in his supplemental brief.

The petitioner's allegations of ineffective assistance of appellate counsel are all baseless. The petitioner's first five claims are inapplicable to his case.  The petitioner asserts that the grand jury violations should have been raised on appeal, that he was prejudicated by duplicity and multiple counts in the indictment, that he was prejudiced by the government's delay in bringing the case, and by the government's violation of speedy trial.  The claims are patently false:  the petitioner was charged by information with one count of Possession of Child Pornography, not multiple counts, and waived his right to have his charges presented to a grand jury.  [Doc. 12]. The charges were well within the statute of limitations, with the petitioner entering a plea to an information approximately one year from the date of the offense, and there was no violation of the speedy trial rule.

The petitioner also alleges his appellate counsel should have appealed the use of self-incriminating statements against him, appealed his attorney not investigating, and the government's violation of "Brady."  As discussed previously in this motion, the government did not use the petitioner's statements against him, so there would be no basis to appeal this use of statements.  The petitioner alleges that the government violated "Brady," however, the petitioner

does not offer any suggestion of what the "Brady" violation was, and the government is not aware of anything that would suggest such a violation.  Any concern the petitioner had regarding his attorney's alleged ineffectiveness for failing to investigate was not appropriate to raise on direct appeal (as claims of ineffective assistance of counsel are generally properly brought in a post-conviction motion), and, again, the petitioner fails to allege what his attorney failed to investigate.

The remaining claims that he alleges should have been raised on appeal were that he was prejudiced by his attorney's failure to withdraw the plea , his plea agreement was not knowingly or voluntarily entered, his attorney filed to inform him of the true nature of the charges and was ineffective in advising him to plead guilty, his waiver of his appellate rights was not knowingly or voluntarily entered, and, finally, that he was prejudiced by the charge, the plea agreement, the plea hearing, the presentence investigation report and sentence, and that his sentence was unconstitutional.  As previously discussed in this response, Magistrate Judge Aloi took great pains with the petitioner to ensure that he was competent and capable of making a decision, that he understood the charge and the consequences, that he understood what rights he had and what rights he was waiving, that his plea was knowing, intelligently, and voluntarily entered, that there were no meritorious legal defenses, and that the petitioner was satisfied with the representation he had received.  [Doc. 35].  The record clearly refutes the petitioner's claim that his plea was involuntary, that his waiver of his appellate rights was involuntary, that he did not understand the nature of the charges against him, and that the proceedings violated the petitioner's constitutional rights.

While the petitioner makes these conclusory allegations of problems with his plea agreement, plea, plea hearing, and sentencing, the petitioner fails to specify what made the various hearings, documents, and processes so defective as to warrant reversal on appeal.  As the petitioner states himself, the "petitioner" must demonstrate that his attorney's performance fell below an

19

objective standard of reasonableness and that but for his attorney's deficient performance, the results of the proceeding would be different.  The petitioner has a higher burden than just pointing his finger and saying ineffective assistance.  The petitioner must actually say what specifically was his attorney's error and how it prejudiced him.

## I.    The defendant cannot demonstrate that he was prejudice by any of the alleged acts of ineffective assistance.

The defendant has the burden of proving that the acts of his attorney fell below the threshold of professional standards, and that but for those acts, the results of the proceeding would have been different.  *Strickland*, 466 U.S. at 694.  The defendant has failed to meet his burden of demonstrating how his attorney's conduct fell below the professional standards, but more so, the defendant has not demonstrated a reasonable probability how the outcome would have been different:  there was no error in the guideline calculation, there was no suppressible evidence, and the defendant has not asserted that a valid defense existed.  *See United States v. Murillo*, 927 F.3d 808, 815-816 (4th Cir. 2019) ("[W]hen deficient performance causes a defendant to accept a plea bargain he might not have otherwise, the defendant must point to evidence that demonstrates a reasonable probability that, with an accurate understanding of the implications of pleading guilty, he would have rejected the deal.  The defendant has not demonstrated such and therefore, he can not meet his burden of demonstrating prejudice.

## IV. Conclusion

The Court should deny the petitioner's amended motion for relief pursuant to 28 U.S.C. § 2255 as he has failed to meet his burden or the record conclusively rebuts his claim.  As such, no

hearing is necessary.  28 U.S.C. § 2255; *United States v. Witherspoon*, 231 F.3d 923, 926-27 (4th Cir. 2000); *United States v. Thomas*, 627 F.3d 534, 539 (4th Cir. 1970).


                                            William Ihlenfeld
                                            United States Attorney

By:    /s/ Jennifer T. Conklin_____
                Jennifer T. Conklin
                Assistant United States Attorney
                WV Bar Number 14122
                United States Attorney's Office
                Northern District of West Virginia
                1125 Chapline Street, Suite 3000
                (304) 234-0100
                Jennie.Conklin@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I, Jennifer T. Conklin, Assistant United States Attorney for the Northern District of West Virginia, hereby certify that on the 15th day of May, 2024, the foregoing *United States' Response in Opposition to Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody* was electronically filed with the Clerk of the Court using the CM/ECF system, which will send automatic electronic notification to all counsel of record, and was mailed, by U.S. Mail, postage pre-paid, to the following non-CM/ECF participant:

Randy McKinley
BOP # 74624-509
F.C.I. Loretto
P.O. Box 1000
Cresson, PA 16630

William Ihlenfeld
United States Attorney

By:    <u>/s/ Jennifer T. Conklin</u>
Jennifer T. Conklin
Assistant United States Attorney
WV. Bar Number 14122
United States Attorney's Office
Northern District of West Virginia
1125 Chapline Street, Suite 3000
(304) 234-0100
Jennie.Conklin@usdoj.gov